**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James HANDFORD and Joshua**
**Kirkwood, Defendants–**
**Appellants.**

Nos. 93–2754, 93–2783.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 4, 1994.

Decided Oct. 31, 1994.

Rehearing Denied Nov. 18, 1994.

John P. Collins (argued), Office of the U.S. Atty., Crim. Div., Barry Rand Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for the U.S.

Christopher T. Van Wagner, Madison, WI, argued, for James Handford.

Lynn A. Hirschfeld, Chicago, IL, argued, for Joshua Kirkwood.

Before BAUER, KANNE, and ROVNER, Circuit Judges.

BAUER, Circuit Judge.

In Waukegan, Illinois, on August 10, 1992, James Handford and Joshua Kirkwood double-crossed potential purchasers of a TEC–9 nine millimeter pistol they had to sell; the purchasers turned out to be Special Agent Mark Shaffer of the Bureau of Alcohol, Tobacco, and Firearms (ATF), posing as a street gang member, and a cooperating individual named Chad Evans. When Shaffer produced the money for the pistol, Handford and Kirkwood brandished their own guns, pistol-whipped Evans, and threatened to kill Evans and Shaffer. As a result of this *contretemps*, a jury convicted Handford and Kirkwood of assaulting a federal officer in violation of 18 U.S.C. § 111(a)(1) and possession and use of a firearm in a crime of violence in violation of 18 U.S.C. § 924(c). For his crimes, each defendant was sentenced to a lengthy prison stay; Handford received a sentence of 97 months, and Kirkwood received a sentence of 102 months. They appeal, and finding no merit to their arguments, we affirm.

Throughout much of 1992, the ATF conducted an undercover operation targeting the sale of weapons by street gangs in Waukegan. Shaffer was assigned to that operation and worked with Evans. Evans used his contacts in the community to learn of various individuals interested in selling weapons and to arrange undercover purchases between those individuals and ATF agents. For his part, Evans received cash payments from the ATF as well as an apartment in which many of the arranged transactions took place.

Evans first met Handford on August 9, 1992, at which time Handford told Evans that he wished to find a buyer for some pistols. When Evans told Handford he was not interested in pistols, Handford offered to sell the TEC–9. Evans told Handford he could arrange a buyer and negotiated a price of $400. The next morning, Evans contacted Shaffer, who told Evans to arrange an undercover buy. Evans and Handford engaged in the haggling over logistics that typically accompanies this type of illicit transaction and finally agreed to conduct the transaction in Evans' apartment on the evening of August 10.

Shaffer, posing as a "biker-type," and Evans proceeded to Evans' apartment that evening where Handford and Kirkwood met them. Once the four were inside, Handford announced that he wanted to complete the transaction in one of the bedrooms. Once in the bedroom, Handford showed the gun to Shaffer. Shaffer examined the gun and produced $400.

While Shaffer counted his money, Kirkwood produced a nine millimeter pistol, cocked it, and repeatedly struck Evans in the face with the butt of the gun. Shaffer realized they were being robbed and put his hands in the air. After hitting Evans several times with his gun, Kirkwood turned to Shaffer and said: "Go ahead, white boy, I'll fucking kill you." At the same time, Handford grabbed the money from Shaffer, picked up the TEC–9, pushed Shaffer out of the way, and moved to the door. Once at the door, Handford loaded the TEC–9 and pointed it at Shaffer. By this time, both Handford and Kirkwood were yelling that they were going to kill Evans and Shaffer.

Not yet done, Kirkwood ordered Shaffer to stand up and, while holding a cocked pistol to Shaffer's head, removed an additional $525 from Shaffer's pocket. They then ordered Shaffer and Evans to remove their clothes. When Shaffer only dropped his pants to his knees, Handford demanded: "No, take all your clothes off." Evans and Shaffer complied, and Handford and Kirkwood then instructed them to lie on the floor. When Shaffer hesitated, Kirkwood hit him on the side of the head and ordered him to lie down or he would kill him. Finally, Handford and Kirkwood left the apartment.

Kirkwood and Handford raise several arguments on appeal. Kirkwood's first, and Handford's only, argument is that their convictions and cumulative sentencing on both 18 U.S.C. § 111 and 18 U.S.C. § 924(c) violate the Double Jeopardy Clause of the Fifth Amendment. They contend that the conduct proscribed by the two statutes of which they were convicted really constitute the same offense under the test established by the Supreme Court in *United States v. Blockburger,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); they argue that they have thus been punished twice for the same offense in violation of the Double Jeopardy Clause. Kirkwood and Handford misperceive the applicable double jeopardy jurisprudence.

█ The Double Jeopardy Clause of the Fifth Amendment dictates that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." The common effect of the clause is "to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Missouri v. Hunter,* 459 U.S. 359, 365, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983) (citations omitted). The clause also protects against multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076–77, 23 L.Ed.2d 656 (1969). But the Supreme Court has consistently held that the Double Jeopardy Clause

734 734

is not implicated in instances in which a defendant is convicted under two distinct statutes in a single trial and punished with cumulative prison sentences where Congress specifically authorized cumulative sentences with respect to the two statutes, whether those statutes apply to the same conduct. *See Hunter,* 459 U.S. at 369, 103 S.Ct. at 679–80; *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182. Thus, the *Blockburger* test for conduct constituting the same offense is irrelevant to our inquiry. *United States v. Powell,* 894 F.2d 895, 900 (7th Cir.1990).

■ We inquire then as to whether Congress intended that one convicted of both assaulting a federal officer and using a firearm during the commission of that crime of violence be subject to multiple sentences. We believe Congress so intended. Section 111(a) of Title 18 states that whoever assaults a federal officer while engaged in official duties shall be fined, imprisoned for not more than three years, or both. Section 111(b) enhances the penalty under this section to no more than ten years if the assailant uses a deadly or dangerous weapon. We now turn to § 924 of Title 18 to determine whether Congress intended to impose punishment in addition to that prescribed in § 111.

Section 924(c) states:

Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years, and if the firearm is a short-barreled rifle, short-barreled shotgun to imprisonment for ten years, and if the firearm is a machinegun, or a destructive device, or is equipped with a firearm silencer or firearm muffler, to imprisonment for thirty years.

Congress amended this statute to include the parenthetical phrase, which did not appear in the previous version of the statute. The purposeful amendment to this statute to include this parenthetical makes it abundantly clear that Congress intended that punishment pursuant to § 924(c) be imposed upon a defendant in addition to any enhanced punishment imposed pursuant to a conviction for a crime of violence.

Obviously, the language of the statute, plain as it is, provides firm footing for our decision, and Congress ensured this result in the amendment's legislative history. The amendment to § 924(c) was included in the Comprehensive Crime Control Act of 1984. The Senate Report on this Act states that the amendment is in response to certain Supreme Court decisions in which the Court held that the statute did not evidence a congressional intent to apply the enhancement provisions of § 924(c) to convictions under statutes already including a weapons enhancement provision. S.Rep. No. 225, 98th Cong., 2d Sess. 312, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3490 (citing *United States v. Simpson,* 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978) (concerning bank robbery) and *Busic v. United States,* 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980) (concerning the assault on a federal officer)). Specifically referring to 18 U.S.C. § 111, the Senate Report states that this is "precisely the type of extremely dangerous offense[ ] for which a mandatory punishment for the use of a firearm is most appropriate." *Id.* Finally, the report, at 313, states:

The Committee has concluded that subsection 924(c) should be completely revised to ensure that all persons who commit Federal crimes of violence, including those crimes set forth in statutes which already provide for enhanced sentences for their commission with a dangerous weapon, receive a mandatory sentence, without the possibility of the sentence being made to run concurrently with that for the underlying offense or for any other crime and

without the possibility of a probationary sentence or parole.

The congressional intent could not be made clearer. Congress intended that multiple sentences be imposed for violations of 18 U.S.C. § 111 and 18 U.S.C. § 924(c), and therefore the district court's imposition of these sentences does not violate the Double Jeopardy Clause.

Notwithstanding the weight of authority against them, Kirkwood and Handford press the argument that they have twice been put in jeopardy as a result of their cumulative punishments. As they see it, permitting Congress to enact legislation designed to impose multiple punishments for conduct that constitutes the same offense under *Blockburger* is tantamount to permitting Congress to circumvent a constitutional limitation on its power at their expense. Their position reflects their basic misunderstanding of double jeopardy. To make it clearer, we will explicate the reasoning underlying the *Blockburger*, *Whalen*, and *Hunter* decisions.

■■■ The Double Jeopardy Clause limits the different branches of our governments differently. It prohibits the executive branch from twice bringing a defendant to trial for the same offense and the legislative branch from enacting legislation permitting the executive branch to do this. In the multiple punishment context, the Double Jeopardy Clause prohibits the judicial branch from imposing multiple punishments in situations in which the legislature did not intend them. It does not limit, however, the legislature in this respect, provided the legislature has adequately expressed its desire for cumulative punishments.

■■■ At the root of the limited impact of the Double Jeopardy Clause on the legislature is the principle that the power to define criminal offenses and prescribe punishments imposed upon those found guilty of them belongs solely to the legislature. As a result, it is completely within a legislature's purview to determine that the appropriate punishment for certain conduct is additional prison time, even if it has already established that a prison sentence be increased for a separate offense that includes such conduct. In the context of this case, Congress could easily have included the enhancements contained in § 924(c) as an additional section of § 111 (or any other statute addressing crimes of violence, for that matter). With respect to this conduct, it did not; but Congress did make clear that a defendant may be punished with cumulative sentences under §§ 111 and 924(c). Thus, the Double Jeopardy Clause has nothing to do with a legislative determination that lengthy prison time, even imposed pursuant to two separate statutes, is the proper punishment. There are, of course, other constitutional limitations upon this legislative power, but the Double Jeopardy Clause is not one of them. *See Whalen*, 445 U.S. at 689 & n. 3, 100 S.Ct. at 1436 & n. 3 (citations omitted).

■■■ Kirkwood next argues that the district court erred when it denied his motion for severance. In judging a motion for severance, the district court must balance the benefit of judicial efficiency in a joint trial with the risk of prejudice to a defendant. *United States v. McAnderson*, 914 F.2d 934, 949 (7th Cir.1990). A severance is warranted only in instances in which the defendant demonstrates "severe prejudice" resulting from the joint trial. *United States v. Curry*, 977 F.2d 1042, 1050 (7th Cir.1992) (citation omitted). We pause to note that, given the district court's broad discretion in managing its docket and the difficulty in establishing severe prejudice, the district court's refusal to sever is rarely reversed. *See id.*

■■■ In this case, Kirkwood points to nothing in the record that demonstrates prejudice, much less "severe prejudice." He simply claims that "there was not a burning need to try the defendant's [sic] together." This claim indicates that there was no significant benefit to judicial efficiency apparent to Kirkwood. Even if this was true, it did not compel a separate trial for Kirkwood.

**736**

Finally, Kirkwood claims that the government's evidence was insufficient to support his conviction. To prevail, Kirkwood must demonstrate that no rational factfinder could have convicted him viewing the evidence in the light most favorable to the government and drawing all reasonable inferences on its behalf. Kirkwood does not come close to meeting this substantial burden.

Kirkwood claims that inconsistencies in the testimonies of the government's witnesses preclude a finding of guilty. The only inconsistencies that Kirkwood references, however, are minor; they concern certain information peripheral to the crime, including small discrepancies as to how the transaction was arranged and what might have transpired outside Evans' apartment. There are, however, no inconsistencies regarding what transpired in Evans' bedroom. With respect to this crime, the testimonies of Shaffer and Evans line up on all fours, thereby clearly supporting Kirkwood's conviction.

Accordingly, the convictions of Kirkwood and Handford are

AFFIRMED.