# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-2561

KEVIN R. MCCLOUD,

*Petitioner-Appellant,*

v.

JODINE DEPPISCH,

*Respondent-Appellee.*

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 01 C 206—**Aaron E. Goodstein**, *Magistrate Judge.*

———————

ARGUED JANUARY 18, 2005—DECIDED JUNE 2, 2005

———————

Before POSNER, EASTERBROOK, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Kevin McCloud pleaded guilty to state charges of robbery and operating a vehicle without the owner's consent arising from a carjacking incident. He later sought postconviction relief from the consecutive terms of imprisonment he was ordered to serve on these charges, contending that because the charges amount to the same offense when the object of the robbery is an automobile, the cumulative punishments deprived him of his constitutional right not to be twice placed in jeopardy for the same offense. The Wisconsin Court of Appeals rejected the premise of his

claim, finding that robbery and operating a vehicle without the owner's consent are separate offenses for which the Wisconsin legislature had authorized cumulative punishments. McCloud now seeks a writ of habeas corpus, contending that the Wisconsin Court of Appeals erred in determining that the two offenses are distinct for purposes of the double jeopardy analysis. However, because the state court's error, if any, was one of state law, it is beyond the limited scope of habeas review.

## I.

David Shelby and his friend Bette Dunn were driving through the State of Wisconsin on the evening of August 12, 1997, when they stopped at a Walgreen's drugstore at approximately 11:00 p.m. Shelby left his keys in the ignition of his car while he ran inside a nearby Taco Bell; Dunn remained behind in the car. At that moment, McCloud and his wife, Donna McCloud, happened to drive by the Walgreen's parking lot. Earlier that evening, the McClouds had spent several hours celebrating Donna's birthday at a local tavern but had run out of money; they decided to find someone to rob. After driving around the city for an hour or more, the McClouds came upon the Walgreen's lot just in time to spot Shelby getting out of his Cadillac. On further reconnaissance, McCloud noticed that the keys were in the ignition of the car. The McClouds had found their victims.

McCloud walked up to the car and entered through the unlocked driver's-side door. He told Dunn to get out of the car and opened her door. Dunn screamed and struggled with McCloud. Shelby, on returning to the car, observed the struggle and intervened. He backed off when McCloud asked him, "Do you want to die?" As McCloud put the car in gear and began to drive away from the scene, Dunn was thrown from the vehicle through the open passenger-side door and run over. She died as a result of the injuries she sustained.

McCloud and his wife were apprehended a short time later. McCloud pleaded no contest to one count of second-degree reckless homicide, and he pleaded guilty to two counts of robbery along with one count of operating a vehicle without the owner's consent. The Milwaukee County Circuit Court ordered him to serve a ten-year prison term on the reckless homicide count, two ten-year terms on the robbery counts concurrent with one another and consecutive to the reckless homicide sentence, and a five-year term for operating a vehicle without the owner's consent consecutive to all other sentences—for a total prison term of 25 years.

McCloud subsequently filed a postconviction motion asking the state court for relief from his consecutive sentence for operating a vehicle without the owner's consent.[1] He asserted that robbery (when the item stolen is a car) and operating a vehicle without the owner's consent amount to the same offense and that punishing him cumulatively on both charges violated his right under the federal and Wisconsin constitutions not to be placed in jeopardy twice for the same offense. The circuit court denied the motion, and McCloud appealed both the judgment of conviction and

---

[1] The general rule in Wisconsin is that a guilty plea waives all non-jurisdictional defects and defenses, including claims that the defendant's constitutional rights were violated prior to the plea. *Mack v. State*, 286 N.W.2d 563, 566 (Wis. 1980). However, a plea of guilty is not treated as a waiver of double jeopardy claims, *State v. Morris*, 322 N.W.2d 264, 265 n.2 (Wis. 1982), unless the defendant has expressly waived his double jeopardy rights, *State v. Robinson*, 638 N.W.2d 564, 567 & n.6 (Wis. 2002) (citing *State v. Hubbard*, 538 N.W.2d 126, 129 (Wis. Ct. App. 1996)). The limited record before us does not suggest that McCloud expressly waived his double jeopardy claim in pleading guilty, and in any event the State by its own concession has not argued at any point in the review of McCloud's claim that he waived it, thereby waiving waiver. *See, e.g.*, *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 389 (7th Cir. 2003).

the denial of his postconviction motion to the Wisconsin Court of Appeals. The appellate court affirmed in an unreported decision. *State v. McCloud*, No. 98-2961-CR, Opinion & Order (Wis. Ct. App. Dec. 13, 1999).

Recognizing that the Double Jeopardy Clause[2] permits multiple punishments to be imposed on a defendant in a single prosecution so long as the legislature authorized cumulative punishments, the Wisconsin Court of Appeals examined the relevant indicia of legislative intent and concluded that the Wisconsin legislature had intended to authorize separate penalties for both robbery and operating a vehicle without the owner's consent. Applying the "same elements" test of *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932), the court considered first whether, as McCloud argued, these two crimes amounted to the same offense. *State v. McCloud*, Op. at 4. More specifically, the court considered whether one could be considered a lesser included offense of the other. *Id.* The court concluded that the answer to this inquiry was no, in that each offense required proof of an element that the other did not. Operating a motor vehicle without the owner's consent required proof that McCloud drove the vehicle, whereas one could rob the owner of his vehicle by towing it, hoisting it onto a truck, or pushing it into a garage rather than driving it away. *Id.* at 5; *see* Wis. Stat. § 943.23(2).

---

[2] Like the Fifth Amendment to the United States Constitution, Article I § 8(1) of the Wisconsin Constitution provides that "no person for the same offense may be twice put in jeopardy or punishment . . . ." The Wisconsin Supreme Court's "tradition is to view these provisions as identical in scope and purpose." *State v. Davison*, 666 N.W.2d 1, 6 (Wis. 2003) (citing *Day v. State*, 251 N.W.2d 811 (Wis. 1977)). Accordingly, the Wisconsin Court of Appeals engaged in a single analysis of McCloud's double jeopardy claim, without differentiating between the federal and state constitutional provisions as to double jeopardy.

Robbery, on the other hand, required proof that McCloud used force and that he intended to steal the car (i.e., permanently deprive the owner of the vehicle), neither of which would be necessary in order to show that he operated the vehicle without the owner's consent. *McCloud*, Op. at 5; *see* Wis. Stat. § 943.32(1)(a). Because, in these respects, the offenses were distinct, "the presumption arises that the legislature intended for cumulative punishment for both offenses." *McCloud*, Op. at 5 (citing *State v. Lechner*, 576 N.W.2d 912, 920 (Wis. 1998)). The court considered whether there were any other factors, including the language of the statutes, legislative history, the nature of the conduct proscribed, or propriety of multiple punishments, that might indicate a legislative intent not to authorize cumulative penalties. *Id.* It concluded, however, that there were no such circumstances rebutting the presumption that multiple punishments were authorized. *Id.* at 6. Accordingly, the court concluded that McCloud was not twice put in jeopardy when he was consecutively sentenced for the two offenses. McCloud sought review in the Wisconsin Supreme Court, which declined to hear his case. *State v. McCloud*, 609 N.W.2d 474 (Wis. 2000) (table).

Having exhausted his state court remedies, McCloud sought a writ of habeas corpus from the district court. The parties consented to disposition by the magistrate judge, who denied McCloud's habeas petition in an unreported decision. *McCloud v. Gamble*, No. 01 C 206, Decision & Order (E.D. Wis. March 31, 2004). The court examined the elements of robbery and operating a motor vehicle without the owner's consent and concluded that the Wisconsin Court had not unreasonably determined that neither was a lesser included offense of the other, such that the two were the same for purposes of the Double Jeopardy inquiry. *Id.* at 3-5. The court subsequently granted McCloud's request for a certificate of appealability. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

## II.

The Fifth Amendment's Double Jeopardy Clause, made applicable to the States via the Due Process Clause of the Fourteenth Amendment, *Benton v. Maryland*, 395 U.S. 784, 793-96, 89 S. Ct. 2056, 2062-63 (1969), provides that "[no] person [shall] be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. CONST. amend. V. This provision protects the criminal defendant in three ways. The first two, and most familiar, of these protections operate as a limit on the executive branch, barring the government from prosecuting the defendant a second time for an offense after he has been convicted or acquitted of that same offense. *See Jones v. Thomas*, 491 U.S. 376, 381, 109 S. Ct. 2522, 2525 (1989); *United States v. Handford*, 39 F.3d 731, 735 (7th Cir. 1994). Neither of these two protections is at issue here, for McCloud was not serially prosecuted. It is, instead, the third protection which is relevant, and that is "the protection against 'multiple punishments for the same offense' imposed in a single proceeding." *Jones*, 491 U.S. at 381, 109 S. Ct. at 2525 (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076 (1969), *overruled in part on other grounds by Alabama v. Smith*, 490 U.S. 794, 109 S. Ct. 2201 (1989)).

This third protection is a limited one, for the Double Jeopardy Clause does not preclude the imposition of multiple punishments for the same offense, so long as the legislature has authorized cumulative punishment. *See id.*; 109 S. Ct. at 2525. As we noted in *Handford*, it is the legislature and the legislature alone that has the power to define criminal offenses and to proscribe penalties for them. 39 F.3d at 735. "As a result, it is completely within a legislature's purview to determine that the appropriate punishment for certain conduct is additional prison time, even if it has already established that a prison sentence be increased for a separate offense that includes such conduct." *Id.* Thus, in the multiple punishments context, the

Double Jeopardy Clause operates as a limit on the judiciary, "'ensuring that the total punishment did not exceed that authorized by the legislature.'" *Jones*, 491 U.S. at 381, 109 S. Ct. at 2525 (quoting *United States v. Halper*, 490 U.S. 435, 450, 109 S. Ct. 1892, 1903 (1989), *overruled in part on other grounds by Hudson v. United States*, 522 U.S. 93, 118 S. Ct. 488 (1997)); *see also United States v. McCarter*, ___F.3d ___, 2005 WL 1022993, at *2 (7th Cir. April 27, 2005); *Handford*, 39 F.3d at 735. So long as the legislature has made sufficiently clear that multiple punishments are permitted, a court does not violate the Double Jeopardy Clause by imposing more than one punishment for the same offense. *Id.*; *see Missouri v. Hunter*, 459 U.S. 359, 366, 103 S. Ct. 673, 678 (1983) ("With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."); *see also Ohio v. Johnson*, 467 U.S. 493, 499 n.8, 104 S. Ct. 2536, 2541 n.8 (1984); *United States v. Colvin*, 353 F.3d 569, 572 (7th Cir. 2003) (en banc).[3]

The question that McCloud's claim presented to the Wisconsin Court of Appeals then, was whether the Wisconsin legislature had authorized cumulative punishments for the two offenses of which McCloud was convicted. The court answered that question in the affirmative. Upon examining the elements of the two crimes, the court concluded that they did not amount to the same offense under *Blockburger*, and the court went on to find that there were no circum-

---

[3] The Double Jeopardy Clause does not limit the number of charges that the government may bring in a single proceeding. "While the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting respondent for such multiple offenses in a single prosecution." *Ohio v. Johnson*, 467 U.S. at 500, 104 S. Ct. at 2541.

stances rebutting the resulting presumption that the legislature had authorized multiple punishments.

The thrust of McCloud's appeal is that the Wisconsin court erred in concluding that robbery and operating a motor vehicle without the owner's consent are not the same offense. McCloud contends that operating a motor vehicle without the owner's consent is a lesser included offense of robbery, so that the two should be treated as the same offense notwithstanding the fact that robbery requires proof of additional elements. McCloud reasons that one cannot steal a vehicle without driving it, whether in the ordinary sense of getting behind the wheel and motoring away or in the sense of having the car towed or moved in some other way. Either way, McCloud insists, the vehicle is being driven:

> To "drive," for purposes of the OAWOC [operating a vehicle without the owner's consent] statute is to exert "the exercise of physical control over the speed and direction of a vehicle while it is in motion." Wis. Stat. Ann. § 943.23(1)(a). True, if a person tows, hoists, or pushes a vehicle, the person is not driving a vehicle in the traditional sense of sitting behind a steering wheel and applying the gas pedal. But the person is still "driving" the vehicle for purposes of the OAWOC statute because to tow, hoist or push a vehicle requires exercising physical control over the speed and direction of the vehicle while it is in motion. It is not physically possible to "take" a vehicle without exercising control over the speed and direction of the vehicle. And both "driving" a vehicle and "taking" a vehicle involve asportation—carrying away and moving property.

McCloud Br. 11-12. Because, in McCloud's view, these two offenses are one and the same, a presumption arises that the legislature did *not* intend for them to be punished cumulatively. *See Rutledge v. United States*, 517 U.S. 292, 297, 116 S. Ct. 1241, 1245 (1996); *State v. Davison*, 666 N.W.2d 1, 13 (Wis. 2003).

But the error, if any, in the Wisconsin Court of Appeals' reasoning was one of state law. The court was examining the elements of two state offenses to determine whether the Wisconsin legislature had intended them to be subject to multiple punishments. The Double Jeopardy Clause did not in any way limit the Wisconsin legislature's options. As the Fourth Circuit has noted, "There is no separate federal constitutional standard requiring that certain actions be defined as single or as multiple crimes." *Sanderson v. Rice*, 777 F.2d 902, 904 (4th Cir. 1985). Thus, the only question for the Wisconsin Court of Appeals was what the legislature had intended. That is purely a matter of state law. *Lechner v. Frank*, 341 F.3d 635, 641-42 (7th Cir. 2003); *see also Johnson*, 467 U.S. at 500, 104 S. Ct. at 2541 (noting that in the event defendant was convicted of both greater and lesser charges in a single prosecution, the state court presumably "will have to confront the question of cumulative punishments *as a matter of state law*") (emphasis ours).

State law errors normally are not cognizable in habeas proceedings, *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991), and the fact that the state court's interpretation of state law happens to be central to the double jeopardy analysis does not permit us to review the Wisconsin Court of Appeals' construction of Wisconsin law. "State courts are the ultimate expositors of their own states' laws and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a state's criminal statutes by the courts of that state except in extreme circumstances . . . ." *Lechner*, 341 F.3d at 641 (quoting *Cole v. Young*, 817 F.2d 412, 416 (7th Cir. 1997)). Although McCloud's double jeopardy claim presents a federal question, it is one that turns on the intent of the Wisconsin legislature. The Wisconsin Court of Appeals undertook an inquiry into the state legislature's intent with respect to robbery and operating a motor vehicle without the owner's consent, and it concluded that the legislature

had intended to authorize multiple punishments for those offenses. We are bound by that determination. *See Johnson*, 467 U.S. at 499, 104 S. Ct. at 2541 ("We accept, as we must, the Ohio Supreme Court's determination that the Ohio Legislature did not intend cumulative punishment for the two pairs of crimes involved here."); *Hunter*, 459 U.S. at 368, 103 S. Ct. at 679 ("[T]he Missouri Supreme Court has recognized that the legislature intended that punishment for violations of the [two] statutes be cumulative. We are bound to accept the Missouri court's construction of that State's statutes."); *Brown v. Ohio*, 432 U.S. 161, 167, 97 S. Ct. 2221, 2226 (1977) ("We are mindful that the Ohio courts 'have the final authority to interpret . . . that State's legislation.'") (quoting *Garner v. Louisiana*, 368 U.S. 157, 169, 82 S. Ct. 248, 254 (1961)); *see Lechner*, 341 F.3d at 641-42; *see also, e.g.*, *Rhode v. Olk-Long*, 84 F.3d 284, 289-90 (8th Cir. 1996); *Smallwood v. Johnson*, 73 F.3d 1343, 1350 (5th Cir. 1996); *Birr v. Shillinger*, 894 F.2d 1160, 1161-62 (10th Cir. 1990) (per curiam); *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989); *Tarpley v. Dugger*, 841 F.2d 359, 364 (11th Cir. 1988); *Brimmage v. Sumner*, 793 F.2d 1014, 1015-16 (9th Cir. 1986) (Kennedy, J.); *Sanderson*, 777 F.2d at 904-05.

The state court's use of the Supreme Court's *Blockburger* test does not give us a toehold into its examination of legislative intent. *See* 28 U.S.C. § 2254(d)(1) (federal court may grant habeas corpus petition where state court's adjudication of claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"). Although the *Blockburger* test has "deep historical roots" in the Supreme Court's double jeopardy precedents, *United States v. Dixon*, 509 U.S. 688, 704, 113 S. Ct. 2849, 2860 (1993), and both federal and state courts use the test to determine whether two offenses are the "same" for purposes of the double jeopardy analysis, it is not a constitutional test in and of itself. Rather, it is simply a means

of evaluating legislative intent. *Albernaz v. United States*, 450 U.S. 333, 340, 101 S. Ct. 1137, 1143 (1981); *Whalen v. United States*, 445 U.S. 684, 691, 100 S. Ct. 1432, 1437 (1980). For that matter, *Blockburger* only represents the starting point in this inquiry: when application of the *Blockburger* test reveals that two offenses are essentially the same, a presumption arises that the legislature did not intend for them to be punished cumulatively, *see Rutledge*, 517 U.S. at 297, 116 S. Ct. at 1245; *United States v. McCarter*, *supra*, 2005 WL 1022993, at *2; *Davison*, 666 N.W.2d at 13; when the test yields the opposite result, a contrary presumption arises, *see Albernaz*, 450 U.S. at 340, 101 S. Ct. at 1143; *Davison*, 666 N.W.2d at 13. Ultimately, either presumption can be overcome with evidence of legislative intent that *Blockburger*'s "same elements" test does not take into account. *See Johnson*, 467 U.S. at 499 n.8, 104 S. Ct. at 2541 n.8 ("As should be evident from our decision in *Missouri v. Hunter*, . . . the *Blockburger* test does not necessarily control the inquiry into the intent of a state legislature."); *Hunter*, 459 U.S. at 366-69, 103 S. Ct. at 678-79; *Davison*, 666 N.W.2d at 13; *see also McCarter*, 2005 WL 1022993, at *3 ("legislative history which clearly indicates an intention regarding whether to permit multiple punishments is entitled to weight"). Thus, rather than suggesting that the Wisconsin court was engaging in a constitutional analysis when it employed the *Blockburger* test, the use of that test simply confirms that the court was assessing legislative intent and thus deciding a question of state law. True enough, the test is a federally-derived analytical tool; but that fact does not give a federal habeas court the authority to police a state court's evaluation of a state legislature's intent.

Whether the Wisconsin Court of Appeals correctly gauged the Wisconsin legislature's intent is thus beyond our purview as an interpretation of state law. *See Lechner*, 341

F.3d at 641-42; *Banner*, 886 F.2d at 780.[4] And it is disposi-
tive of the narrow constitutional question over which we do
have jurisdiction. As we noted earlier, in the multiple
punishments context, the Double Jeopardy Clause serves
only to ensure that the judiciary has exercised its sentencing
authority in accord with the legislature's intent. *Hunter*, 459
U.S. at 366, 103 S. Ct. at 678. Because, as the state court
determined, the Wisconsin legislature authorized multiple
punishments for the two offenses on which McCloud was
sentenced to consecutive sentences, there was no double
jeopardy violation. *Id.* at 368-69, 103 S. Ct. at 679. We
might have a different case if the Wisconsin court had said
that legislative intent is irrelevant to the double jeopardy
analysis, or that although the Wisconsin legislature clearly
had *not* intended for the two crimes to be punished cumu-
latively, the consecutive sentences imposed on McCloud
were nonetheless acceptable despite the Double Jeopardy
Clause. Such notions, which implicate federal constitutional
principles as opposed to the intent of the state legislators
who enacted state law, would be within our power to address
in a habeas proceeding. *Cf. Johnson*, 467 U.S. at 499-500,
104 S. Ct. at 2541 (although U.S. Supreme Court accepted
state court's conclusion that state legislature did not au-
thorize cumulative punishment for two sets of crimes at
issue, it rejected state court's conclusion that defendant's

---

[4] McCloud does not separately argue that the Wisconsin Court of
Appeals' construction of state law results in some fundamental
unfairness that might be cognizable in habeas corpus, *see Lechner*,
341 F.3d at 642, and no such unfairness is obvious to us. The state
court's conclusion that the two offenses are distinct—i.e., that it
is possible to rob someone of his car without driving it, and that it
is also possible to operate a vehicle without permission while not
committing robbery, strikes us as plausible. Moreover, McCloud,
by the admission of his own attorney, cannot identify any Wiscon-
sin case law that is contrary to the Court of Appeals' decision in
this case.

guilty plea on lesser charges precluded State from proceeding to trial on remaining charges, distinguishing between prosecuting a defendant for multiple offenses in a single proceeding and punishing a defendant for those offenses). But, of course, the Wisconsin Court of Appeals said nothing at all like that. The court recognized that the federal constitutional question turned on the legislature's intent, it conducted an appropriate inquiry into that intent, and concluded that the legislature had authorized multiple punishments for robbery and operating a vehicle without the owner's consent. That answer closes the door on McCloud's double jeopardy claim.

## III.

For the defendant who receives multiple punishments in a single proceeding, the Double Jeopardy Clause serves only to ensure that the legislature authorized cumulative punishments; it does not preclude such punishments. The Wisconsin Court of Appeals has considered whether the Wisconsin legislature intended to permit multiple punishments as to the crimes for which McCloud was sentenced to consecutive terms: on examining the elements of the two statutes in question, the court concluded that they were distinct offenses for which the state legislature had authorized multiple punishments. The cumulative punishments imposed on McCloud therefore were consistent with the legislature's intent and did not run afoul of the Double Jeopardy Clause. Although McCloud maintains that the state court erred in concluding that the two offenses were not the same, that conclusion is solely one of state law, and we have no power to review that conclusion. The decision of the district court to deny McCloud's petition for a writ of habeas corpus is therefore AFFIRMED.

A true Copy:

     Teste:

                        _____

                        *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*