NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0187n.06
Filed: April 9, 2008

No. 06-3857

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TOBY PALMER, | ) | |
| | ) | ON APPEAL FROM THE |
| Petitioner-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | SOUTHERN DISTRICT OF |
| | ) | OHIO |
| JAMES HAVILAND, Warden, | ) | |
| | ) | **OPINION** |
| Respondent-Appellee. | ) | |

BEFORE:    CLAY and McKEAGUE, Circuit Judges; and BOYKO, District Judge.[*]

**McKEAGUE, Circuit Judge.** Can a defendant commit aggravated robbery but not robbery in Ohio? In essence, this is the question that Petitioner Toby Palmer asks us to resolve. He argues that a person cannot commit aggravated robbery without also committing robbery and, therefore, he should have been punished for only one of the crimes, but not both, under the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution.

We cannot, however, reach that substantive question. The Ohio courts have interpreted the relevant Ohio statutes as permitting punishment for both robbery and aggravated robbery. A federal court on habeas review is bound by a state court's interpretation of state law. Accordingly, we affirm the district court's denial of habeas relief to Palmer.

---

[*]The Honorable Christopher A. Boyko, United States District Judge for the Northern District of Ohio, sitting by designation.

**I**

The facts of this case are not in dispute. In March 2001, Jeffrey Horton planned to visit his wife who had been admitted to the hospital for pregnancy complications. When he arrived at the hospital parking garage, he saw a maroon Ford Taurus with three men, one of whom was Palmer. Horton recognized the men because he had earlier struck up a conversation with them at a fast-food restaurant. The men commandeered Horton and his car at gunpoint. They drove away to an apartment complex; once there, they took all of Horton's money and jewelry and ordered him to take some televisions out of the car.

Believing that his life was in imminent danger, Horton grabbed a firearm from one of the robbers and escaped. Police eventually arrested the three men. Horton identified all three robbers from photographic arrays.

A Hamilton County grand jury indicted Palmer on one count of aggravated robbery in violation of O.R.C. § 2911.01(A)(1),[1] with a firearm specification, one count of robbery in violation of O.R.C. § 2911.02(A)(2),[2] and one count of kidnapping in violation of O.R.C. § 2905.01(A)(2), with a firearm specification. A jury found Palmer guilty of aggravated robbery with a gun

---

[1]O.R.C. § 2911.01 Aggravated Robbery. (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; . . . .

[2]O.R.C. § 2911.02 Robbery. (A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following: . . . (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another; . . . .

specification and of robbery, but not guilty of kidnapping. The trial court sentenced him to

consecutive terms of incarceration of ten years on the aggravated robbery conviction, eight years on

the robbery conviction, and three years on the firearm specification conviction.

Palmer filed a timely appeal in which he argued, inter alia, that the trial court erred in

imposing consecutive maximum sentences. The Court of Appeals of Ohio affirmed. *State v. Palmer*,

772 N.E.2d 726 (Ohio Ct. App. 2002). On his claim involving consecutive maximum sentences, a

claim grounded in double-jeopardy concerns, the Ohio Court of Appeals explained as follows:

> { 9} Palmer first argues that his convictions involved allied offenses of similar
> import, and thus that his sentences for aggravated robbery and robbery should have
> merged pursuant to R.C. 2941.25. We disagree.
>
> { 10} In *State v. Rance*, [(1999), 85 Ohio St.3d 632, 710 N.E.2d 699] the Ohio
> Supreme Court held that two statutory offenses are allied offenses of similar import
> if the elements of each offense "correspond to such a degree that the commission of
> one crime will result in the commission of the other." [Id. at 638, 710 N.E.2d 699.]
> The *Rance* test requires a strict textual comparison of the statutory elements, without
> reference to the particular facts of the case, to determine whether one offense requires
> proof of an element that the other does not. If there are differing elements, the
> inquiry ends, and multiple convictions and sentences are allowed.
>
> { 11} Although Palmer acknowledges that this court, in *State v. Norman* [, (199[9]),
> 137 Ohio App.3d 184, 738 N.E.2d 403,] and *State v. Berry*, [(Apr. 14, 2000), 1st
> Dist. Nos. C-990354 and C-990365, 2000 WL 376409,] applied the *Rance* test and
> determined that aggravated robbery and robbery are not allied offenses because each
> offense requires proof of an element that the other does not, he asks us to reconsider
> those decisions in light of *State v. Grant* [, (Mar. 23, 2001), 1st Dist. No. C-971001].
> In *Grant*, a panel of this court commented that the Ohio Supreme Court, in *State v.
> Fears*, [(1999), 86 Ohio St.3d 329, 715 N.E.2d 136,] had appeared to have implicitly
> overruled *Rance*.
>
> { 12} This court has already addressed that concern, holding that, despite the
> comment in *Grant*, *Berry* and *Norman* remain controlling because the Ohio Supreme
> Court has not explicitly overruled *Rance* and has not specifically addressed whether
> aggravated robbery and robbery are allied offenses. [*State v. McNeal* (Nov. 2, 2001),

1st Dist. No. C-000717, 2001 WL 1346186.] Furthermore, we note that the Ohio Supreme Court continues to use the *Rance* test without citation to *Fears*. [See *State v. Childs* (2000), 88 Ohio St.3d 558, 728 N.E.2d 379.]

{ 13} While we may not consider the *Rance* test to be the best approach for determining when charged offenses are allied offenses, because it fails to consider the individual facts of a case, as some courts have done when applying the *Blockburger* test, [*Rance*, supra, at paragraph three of syllabus,] we are bound, "as an intermediate appellate court, until the Ohio Supreme Court tells us otherwise, [to] apply the clearly defined test for cumulative punishments in *Rance*, no matter if we disapprove of the result reached." [*Norman*, 137 Ohio App.3d at 203, 738 N.E.2d 403.] Accordingly, as robbery and aggravated robbery are not allied offenses on the basis of *Rance*, the trial court properly imposed multiple sentences. [See *Norman*, supra; see *Berry*, supra.]

*Id.* at 728-29 (footnotes omitted). Presiding Judge Painter dissented:

{ 17} *Rance* is not just intuitively wrong, it is legally wrong. The Ohio Supreme Court has the law of double jeopardy in jeopardy of disappearing, in addition to the bollix it has made of the related problems of allied offenses and lesser-included offenses. [*State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294; *State v. Barnes* (2002), 94 Ohio St.3d 21, 759 N.E.2d 1240, especially Lundberg Stratton, J., dissenting.] It seemed that the Supreme Court overruled *Rance*, albeit by implication, in *State v. Fears*. [(1999), 86 Ohio St.3d 329, 344, 715 N.E.2d 136.] We so held in *State v. Grant*, [(Mar. 23, 2001), 1st Dist. No. C-971001, appeal not allowed (2001), 92 Ohio St.3d 1443, 751 N.E.2d 482,] which the Supreme Court declined to review.

{ 18} In *State v. McIntosh*, [(2001), 145 Ohio App.3d 567, 763 N.E.2d 704,] I wrote, "While an argument can be made that because the syllabus in *Rance* was not overruled in *Fears*, *Rance* is still viable, I prefer to conclude that the Ohio Supreme Court recognized its error; though it would be much better if that court would do so specifically." Even though the court has cited *Rance* after deciding *Fears*, I believe that is not necessarily sufficient to undo *Fears*. In *Fears*, the court did not even cite *Rance*, though surely the court must have been aware of its own prior decisions.

{ 19} Therefore, I dissent and join Justice Lundberg Stratton[,*State v. Barnes* (2002), 94 Ohio St.3d 21, 759 N.E.2d 1240 (Lundberg Stratton, J., dissenting),] in urging the Supreme Court to revisit this area and correct its mistakes. The confusion created for the trial and appellate courts of this state should be resolved.

*Id.* at 729-30 (footnotes omitted).

Palmer appealed to the Supreme Court of Ohio. The court summarily dismissed his appeal as not involving any substantial constitutional question.

Palmer subsequently petitioned the federal district court for a writ of habeas corpus. In support, he raised two grounds for relief, only one of which is relevant on appeal: "Ground One: Petitioner's right to be free from Double Jeopardy was violated when the state court punished him twice for the same offense, in violation of the Fifth and Fourteenth Amendments to the United States Constitution." The district court referred the matter to a magistrate judge, who recommended that the petition be denied. The district court accepted the magistrate judge's report and recommendation over Palmer's objection.[3]

This appeal followed.

## II

### A. Standard of Review

We review de novo the district court's decision to deny habeas relief to Palmer. *Linscott v. Rose*, 436 F.3d 587, 590 (6th Cir. 2006). Palmer filed his petition after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA is "foremost" among the "multiple lenses of deference" through which a federal habeas court views the questions before

---

[3]The magistrate judge determined that Palmer had fairly presented his double-jeopardy claim before the Ohio courts and, therefore, had exhausted his state remedies on that claim. The district court agreed and neither party disputes this matter on appeal.

it. *Ross v. Petro*, 515 F.3d 653, 660 (6th Cir. 2008). A federal court can grant a writ of habeas corpus only where the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if the state court applies a rule differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "The [federal] court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Id.* "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also have been unreasonable." *Walls v. Konteh*, 490 F.3d 432, 436 (6th Cir. 2007) (citations omitted).

**B.      Double Jeopardy Involving Multiple Punishments**

The Supreme Court has identified three ways in which the Double Jeopardy Clause protects a criminal defendant's rights.[4] It "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it

---

[4]The Supreme Court applied the double-jeopardy provision of the Fifth Amendment to the States in *Benton v. Maryland*, 395 U.S. 784 (1969).

protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 716 (1969) (footnotes omitted), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989). Palmer's claim falls under the latter category, a category which former Chief Justice Rehnquist described as "a veritable Sargasso Sea which could not fail to challenge the most intrepid judicial navigator." *Albernaz v. United States*, 450 U.S. 333, 343 (1981).

Unlike the first two categories, the multiple-punishments category of double jeopardy is primarily one of legislative intent. A legislature defines criminal action and criminal punishment. *Whalen v. United States*, 445 U.S. 684, 689 (1980). As long as they act within the broad contours of the Eighth Amendment and other federal (and possibly state) constitutional provisions, *id.* at 689 n.3 (collecting cases), Congress and state legislatures can proscribe multiple punishments in connection with the same criminal activity, *Albernaz*, 450 U.S. at 344 ("Thus, the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed. Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution."). A court cannot, however, exceed the authorization granted to it by a legislature by imposing multiple punishments for activity that the legislature intended to punish only once. *Missouri v. Hunter*, 459 U.S. 359, 366 (1983) ("With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."); *Brown v. Ohio*, 432 U.S. 161, 165 (1977) ("Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple

punishments for the same offense."). Thus, if a legislature permits multiple punishments, a court can impose such punishments; if a legislature prohibits multiple punishments, a court cannot impose such punishments without running afoul of the federal prohibition against double jeopardy.

In determining whether a legislature permits multiple punishments, a court's role is limited to discerning "'whether the legislature intended to punish cumulatively the same conduct which violates two statutes.'" *Carter v. Carter*, 59 F. App'x 104, 107 (6th Cir. 2003) (unpublished) (quoting *United States v. Johnson*, 22 F.3d 106, 107-08 (6th Cir. 1994)). In general, legislative intent is discerned from the statutory language, legislative history, and by application of the test set out in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *United States v. Hebeka*, 25 F.3d 287, 290 n.5 (6th Cir. 1994). In *Blockburger*, the Supreme Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304. In applying the test, the Supreme Court looked to the "face of the statute," and consequently found that the "plain meaning of the provision" allowed multiple penalties. *Id.* at 304-05.

In *Whalen*, the Supreme Court applied the *Blockburger* test for the first time to provisions defining compound and predicate offenses. 445 U.S. at 690-92 (using the *Blockburger* test to determine whether provisions of the District of Columbia criminal code authorized consecutive sentences for rape and for a killing committed in the course of the rape). The *Whalen* Court held that Congress did not intend to authorize consecutive sentences because the *Blockburger* test revealed that "conviction for killing in the course of a rape cannot be had without proving all the elements of

the offense of rape." *Id.* at 693-94. The majority reiterated that *Blockburger* should be applied to the particular statutory provisions at issue and not "to the facts alleged in a particular indictment." *Id.* at 694 & n.8.

## C.    Statutory Construction

Utilizing the test for statutory construction set forth in *Rance*, Ohio courts have concluded that the state legislature intended to permit cumulative punishments for both robbery and aggravated robbery. In *Rance*, the Supreme Court of Ohio looked first to the state's multi-count statute, O.R.C. § 2941.25,[5] to discern whether the legislature intended for the possibility that a defendant could be convicted and punished for more than one "allied offense." Under that statute, a defendant can be punished for crimes of dissimilar import, *id.* § 2941.25(A), or for crimes of similar import if the defendant committed them separately or with separate animus, *id.* § 2941.25(B). *Rance*, 710 N.E.2d at 703. To determine whether a crime involved allied offenses of similar or dissimilar import, a court must consider whether "the elements of the crimes correspond to such a degree that the

---

[5] O.R.C. § 2941.25 Multiple Counts provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where this conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

commission of one crime will result in the commission of the other." *Id.* (internal quotation marks omitted). If so, then the crimes are of similar import and a defendant can be found guilty and punished for only one unless he committed the crimes separately or with separate animus. If not, then a defendant can be convicted of both under O.R.C. § 2941.25(A). The Supreme Court of Ohio explained that "the comparison of elements of offenses outlined in *Blockburger* is reflected in [O.]R.C. § 2941.25(A)" and, therefore, "cases discussing and applying *Blockburger* are helpful, though not controlling, in [its] examination of Ohio law." *Id.*

As noted in its decision on direct appeal, the Court of Appeals of Ohio has considered on two earlier occasions whether robbery and aggravated robbery were allied crimes of similar import. Applying *Rance* in each case, the Court of Appeals concluded that the two offenses were not. In *State v. Norman*, 738 N.E.2d 403 (Ohio Ct. App. 1999), the defendant, like Palmer, had been convicted of robbery under O.R.C. § 2911.02(A)(2) and aggravated robbery under O.R.C. § 2911.01(A)(1). The court analyzed the two subsections in the abstract and concluded that each required proof of an element not required in the other. *Norman*, 738 N.E.2d at 416. Under the state's multi-count statute (as interpreted by *Rance*), the two offenses were not allied offenses of similar import. *Id.* at 416-17. Thus, the defendant in *Norman* could be subject to cumulative punishment for the two offenses without violating double jeopardy. *Id.* The state appellate court held similarly in the subsequent case of *State v. Berry*, Nos. C-990354/5, 2000 WL 376409, at *3 (Ohio Ct. App. Apr. 14, 2000) ("An element of aggravated robbery, viz., brandishing or using a deadly weapon, was not required to prove robbery. An element of robbery, viz., the infliction, attempted infliction, or

threatened infliction of physical harm, was not required to prove aggravated robbery. Each offense required proof of an element that the other did not.").

Upon recognizing that Ohio courts have clearly answered the question of legislative intent, our role is at an end. In *Banner v. Davis*, a case involving a similar double-jeopardy claim on habeas review, this court explained, "For the purpose of double jeopardy analysis, once a state court has determined that the state legislature intended cumulative punishments, a federal habeas court must defer to that determination." 886 F.2d 777, 780 (6th Cir. 1989). We cannot independently apply typical rules of statutory construction, including the *Blockburger* test, to a state statute and conclude that the state courts were wrong in their reading of legislative intent. *McCloud v. Deppisch*, 409 F.3d 869, 875 (7th Cir. 2005) ("The state court's use of the Supreme Court's *Blockburger* test does not give a toehold into its examination of legislative intent. . . . [The *Blockburger* test] is not a constitutional test in and of itself. Rather, it is simply a means of evaluating legislative intent."). As long as the state court has concluded that the legislature intended cumulative punishment, this court is bound by that conclusion. *Banner*, 886 F.2d at 782 ("Contrary to [the petitioner's] assertion, then, we may not use the *Blockburger* test—a rule of statutory construction for federal statutes—to independently evaluate the scope of the Tennessee statute here, the Tennessee Court of Criminal Appeals and Supreme Court having already held that the legislature intended cumulative punishment."); *see also Ohio v. Johnson*, 467 U.S. 493, 499 (1984) ("We accept, as we must, the Ohio Supreme Court's determination that the Ohio legislature did not intend cumulative punishment for the two pairs of crimes involved here."); *cf. Pryor v. Rose*, 724 F.2d 525, 531 (6th Cir. 1984) (en

banc) (finding that the state court had inferred legislative intent and had not shown that the legislature "clearly indicated" multiple punishments were intended).

Other circuits have similarly held that they are bound by state court interpretations of state law authorizing multiple punishments. For example, in *McCloud*, the Seventh Circuit concluded that the petitioner's double-jeopardy claim was precluded by a Wisconsin court's reading of legislative intent. The state court had concluded that the legislature had authorized multiple punishments for the offenses of which the petitioner had been convicted. *McCloud*, 409 F.3d at 876. Whether the state court's reading was in some sense "correct" was beyond the federal court's "purview as an interpretation of state law." *Id.* The Seventh Circuit noted that it "might have a different case if" the state court had deemed legislative intent irrelevant or, rather, had found that the legislature had not intended multiple punishments but that the petitioner's multiple punishments were nonetheless acceptable despite the Double Jeopardy Clause. *Id.* "Such notions," the court explained, "implicate federal constitutional principles as opposed to the intent of the state legislators who enacted state law, [and] would be within [its] power to address in a habeas proceeding." *Id.* The state court did nothing like that, however, but instead "recognized that the federal constitutional question turned on the legislature's intent." *Id.* The state court "conducted an appropriate inquiry into that intent, and concluded that the legislature had authorized multiple punishments for robbery and operating a vehicle without the owner's consent. That answer close[d] the door on [the petitioner's] double jeopardy claim," according to the Seventh Circuit. *Id.*; *see also Birr v. Shillinger*, 894 F.2d 1160, 1162 (10th Cir. 1990) ("The [Wyoming Supreme Court] majority's interpretation of the legislative intent for the imposition of multiple punishments is binding on this court irrespective of the views

of [that court's] dissenters. . . . [W]e find no violation of the double jeopardy clause."); *Deloach v. Wainwright*, 777 F.2d 1524, 1525-26 (11th Cir. 1985) (concluding that it was bound by a finding by the Florida Supreme Court that the Florida legislature intended multiple punishments for felony murder and the underlying felony).

The Court of Appeals of Ohio held that the state legislature intended for cumulative punishments for robbery and aggravated robbery. In doing so, it relied upon the test for statutory construction set forth by the Supreme Court of Ohio. While both the majority and the dissent voiced concerns about the soundness of the *Rance* test, the majority correctly noted that it was bound by that decision unless and until the Supreme Court of Ohio takes up the issue again. *Johnson v. Microsoft Corp.*, 805 N.E.2d 179, 181-82 (Ohio Ct. App. 2004) (explaining that when faced with controlling authority by a superior court and another line of decisions, a court of appeals has only one course—to follow the authority of the court to which it is inferior, leaving to the higher court the prerogative of overruling its own decisions). As the state appellate court clearly held that multiple punishments for the two crimes are permissible under Ohio law, the state trial court did not violate Palmer's federal right against double jeopardy.

**III**

For the reasons set forth above, we AFFIRM the district court's denial of a writ of habeas corpus in this case.