*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0033p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

KENNETH D. LINSCOTT,

        *Petitioner-Appellant,*

    *v.*

NORMAN ROSE, Warden,

        *Respondent-Appellee.*

No. 04-3474

>

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 03-01178—Patricia A. Gaughan, District Judge.

Submitted: September 14, 2005

Decided and Filed: January 3, 2006[*]

Before: CLAY, GIBBONS, and GRIFFIN, Circuit Judges.

---

**COUNSEL**

**ON BRIEF:** Nathan A. Ray, Akron, Ohio, for Appellant. Thelma Thomas Price, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS LITIGATION SECTION, Columbus, Ohio, for Appellee.

---

**OPINION**

---

    JULIA SMITH GIBBONS, Circuit Judge. Kenneth D. Linscott, an Ohio state prisoner convicted of two counts of gross sexual imposition, appeals the district court decision denying his petition for a writ of habeas corpus. Linscott's petition challenges the use of a court-ordered, pretrial psychiatric evaluation at sentencing. Linscott claims the use of the psychiatric evaluation violated his Fifth Amendment privilege against self-incrimination. The district court held that Linscott's claim was barred under the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d)(1)(A). As explained below, we find that Linscott's petition was timely. Nonetheless, after reviewing the merits of Linscott's petition, we affirm the district court's decision to deny the petition.

---

[*]This decision was originally issued as an "unpublished decision" filed on January 3, 2006. The court has now designated the opinion as one recommended for full-text publication.

I.

After Linscott was indicted on two counts of gross sexual imposition, he initially pleaded not guilty and not guilty by reason of insanity. Upon entry of his not-guilty-by-reason-of-insanity plea, the Ohio trial court ordered Linscott to undergo a psychiatric evaluation pursuant to Ohio Revised Code § 2945.371. A final report of the psychiatric evaluation, which was conducted by a psychodiagnostic clinic, was addressed and sent to the trial judge. The report indicates that Linscott was informed that the results of the evaluation would not be confidential and would be summarized in a report to the court. The record does not reflect whether Linscott received a *Miranda* warning prior to the evaluation.

Following a plea agreement, Linscott pleaded guilty to both offenses. On December 28, 1999, the Ohio trial court sentenced Linscott to five years of community control and classified him as a sexual predator. As part of the community control program, Linscott was required to successfully complete the Volunteers of America New Life Sex Offender ("VOA") rehabilitation program in Cincinnati, Ohio. During sentencing, the trial judge told Linscott, "[I]f you do not complete this program or there's any deviation from the condition I have set here, the sentence in this matter will be five years consecutive. . . . The maximum I can impose is five on each count and I will run them consecutive." The trial judge continued, "No violations of these orders whatever, and if there are any, once again, it will be ten years, you won't have to go through all these various steps and procedures." The trial court acknowledged that it had considered the psychiatric evaluation in making its determination.

On January 12, 2000, Linscott was discharged from the VOA program because of several violations and an inability to adjust to the program. On February 20, 2000, the trial court held that Linscott had violated the terms of his community control and sentenced him to serve two consecutive five-year prison terms. At the hearing, the trial judge again noted that the psychiatric evaluation had been considered. The trial court also noted that it had considered a report that the VOA program had prepared after discharging Linscott.

Linscott timely appealed both his sentence and his sexual predator classification in state court. The Ninth District Court of Appeals of Ohio consolidated these appeals, in which Linscott raised five assignments of error. Linscott's second assignment of error, which forms the basis of his federal habeas petition, challenged the use of the court-ordered, psychiatric evaluation during sentencing. On January 10, 2001, the Ninth District Court of Appeals ruled on the appeal. The appellate court denied Linscott's first assignment of error, which pertained to a denial of rights to which Linscott claimed he was entitled because of his mental disabilities. Upon reaching the second assignment of error, which concerned the use of the psychiatric evaluation, the court stated that, pursuant to Ohio appellate procedure, "this Court's disposition of the first assignment of error renders Defendant's second assignment of error moot and accordingly, it will not be addressed." *State v. Linscott*, No. 20021, 2001 WL 22304, *7 (Ohio Ct. App. Jan. 10, 2001). The appellate court did sustain Linscott's third assignment of error, which concerned sentencing, and his fourth assignment of error, which concerned the sexual predator classification, and remanded the case for resentencing and redetermination of the sexual predator classification.

Linscott appealed the Ninth District Court of Appeals' affirmance of his conviction to the Ohio Supreme Court. In his appeal, Linscott advanced three propositions of law in support of jurisdiction, of which none concerned the constitutionality of using the psychiatric evaluation at sentencing. On May 23, 2001, the Ohio Supreme Court denied the appeal.

On March 13, 2001, Linscott was resentenced to two consecutive five-year prison terms. As in the December 28, 1999 and February 25, 2000 sentencing hearings, the trial judge referenced the psychiatric evaluation.

Linscott timely appealed his March 13, 2001 resentencing to the Ninth District Court of Appeals. He again raised the psychiatric evaluation claim as one of his three assignments of error. On October 31, 2001, the appellate court overruled each of Linscott's assignments of error and affirmed the trial court's resentencing order. In so doing, the Ohio appellate court declined to reach Linscott's psychiatric evaluation claim. The appellate court stated:

> Linscott has asserted in his first assignment of error that the trial court erred in considering the psychodiagnostic report which was compiled as a result of his not guilty by reason of insanity plea, and the VOA termination report, in sentencing and adjudicating him a sexual predator. Linscott previously raised this argument with respect to the psychodiagnostic report in his first appeal. *See Linscott I, supra*, at 12-13. This Court declined to address the issue in *Linscott I*, finding it moot based upon the disposition of another assignment of error. It appears that Linscott has attempted to argue that this Court should now address the issue because in *Linscott I* we did not state this Court's reasons for finding the assignment of error moot. As this Court's decisions in *Linscott I* are now the law of the case, we decline the invitation to revisit the issue. *See Nolan v. Nolan* (1984), 11 Ohio St. 3d 1, 3 (explaining that "the doctrine [of the law of the case] provides that the decision of a reviewing court remains the law of that case in a case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels").

*State v. Linscott*, No. 20525, 2001 WL 1339485, *2 (Ohio Ct. App. Oct. 31, 2001). Linscott filed a motion to reconsider, which was denied. Linscott then appealed his resentencing to the Ohio Supreme Court. Linscott raised the psychiatric evaluation claim in this appeal. On March 4, 2002, the Ohio Supreme Court declined jurisdiction and dismissed Linscott's appeal.

On January 29, 2002, Linscott filed an application to reopen his direct appeal, pursuant to Ohio Rule of Appellate Procedure 26(B), on the ground of ineffective assistance of appellate counsel. The Rule 26(B) application was denied by the appellate court on February 25, 2002. On April 10, 2002, Linscott appealed this denial of his Rule 26(B) application. On June 12, 2002, the Ohio State Supreme Court dismissed Linscott's Rule 26(B) application as not involving any substantial constitutional question.

On June 11, 2003, Linscott filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Ohio. The district court denied the petition and denied issuance of a certificate of appealability on March 3, 2004. Linscott filed a request for a certificate of appealability with the Sixth Circuit. A partial certificate of appealability, required pursuant to 28 U.S.C. § 2253(c) and Fed. R. App. P. 22(b)(1), was granted by this court for a single issue: "whether the use at sentencing of Linscott's statements made during a pre-trial mental examination violated his right against self-incrimination."

## II.

We review the district court's factual findings for clear error and its decision to grant or deny the writ of habeas corpus *de novo*. *Barker v. Yukins*, 199 F.3d 867, 870 (6th Cir. 1999).

## A.

A person in custody pursuant to the judgment of a state court must file his application for a writ of habeas corpus within one year of the date on which the judgment became final by either the conclusion of direct review or the expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1)(A). The one-year statute of limitations does not begin to run until the time for filing a petition for a writ of certiorari for direct review in the United States Supreme Court has expired.

*Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000) (citing *Isham v. Randle*, 226 F.3d 691, 694-95 (6th Cir. 2000)).  The time limitation is tolled during the pendency of an application to reopen pursuant to Ohio R. App. Pro. 26(B).  *See Bronaugh*, 235 F.3d at 286.

We have previously examined both the tolling of and the relevant start date for the § 2244(d)(1)(A) one-year statute of limitations in the context of state post-conviction relief.  *See Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001); *Bronaugh*, 235 F.3d at 285.  We have not, however, had occasion to determine the relevant start date for the limitations period for a challenge to an alleged constitutional error that occurred upon resentencing.  *Cf. Allen v. Yukins*, 366 F.3d 396, 400 (6th Cir. 2004) (declining to reach the related question of when the statute of limitations period begins to run on a habeas petition that challenges two convictions that became final at different times).

We now hold that the one-year statute of limitations begins to run on a habeas petition that challenges a resentencing judgment on the date that the resentencing judgment became final, rather than the date that the original conviction became final.  *See Walker v. Crosby*, 341 F.3d 1240, 1246 (11th Cir. 2003); *Hepburn v. Moore,* 215 F.3d 1208, 1209 (11th Cir. 2000).  The plain language of AEDPA dictates this result where the "judgment" being challenged is the resentencing judgment.  *See* 28 U.S.C. § 2244(d)(1)(A) ("The limitation period shall run from the . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."); *cf. Flynt v. Ohio*, 451 U.S. 619, 620 (1981) (per curiam) ("Applied in the context of a criminal prosecution, finality is normally defined by the imposition of the sentence.").

In addition, we disagree with the district court's reasoning that, because Linscott raised the psychiatric evaluation claim in his first direct appeal, the conclusion of the first- rather than second-direct appeal was the relevant "final judgment" for AEDPA purposes.  While Linscott claimed on his first direct appeal that the use of the psychiatric evaluation at sentencing was unconstitutional, the Ohio appellate court remanded his case for resentencing without addressing this claim.  Linscott's claim on his second direct appeal, which forms the basis of his present habeas claim, was that the March 13, 2001 resentencing violated his constitutional rights through the, albeit repeated, use of the psychiatric evaluation.  The alleged constitutional error, therefore, did not even occur until his March 13, 2001 resentencing.  *See Hepburn*, 215 F.3d at 1209 ("AEDPA cannot be interpreted to require a prisoner to raise claims before they arise, including claims that originate in the context of resentencing.").

We find that Linscott's relevant direct appeal was not completed in state court until March 4, 2002, the date on which the Ohio Supreme Court denied review of Linscott's second direct appeal.  Linscott's petition for a writ of certiorari in the United States Supreme Court was therefore due on June 3, 2002.  Since the limitations period was tolled between January 29, 2002 and June 12, 2002, during which time Linscott's Rule 26(B) application was pending in state court, the one-year clock effectively started to run on June 12, 2002.  Thus, Linscott's June 11, 2003 habeas petition was timely.

B.

The State argues, as it did to the district court, that we should find that Linscott's psychiatric evaluation claim was procedurally defaulted.  If Linscott defaulted his psychiatric evaluation claim pursuant to an independent and adequate Ohio state procedural rule, federal habeas review would be barred unless Linscott demonstrated cause for the default and actual prejudice resulting from the use of the psychiatric evaluation, or that our failure to consider his claim would result in a fundamental miscarriage of justice.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

The district court did not consider whether Linscott's psychiatric evaluation claim was subject to procedural default. Moreover, the record is less than clear as to whether the Ohio courts found Linscott's claim was procedurally defaulted and, if so, whether such a ruling was proper. During Linscott's first direct appeal, the Ohio appellate court stated only that Linscott's psychiatric evaluation claim was rendered "moot and accordingly [would] not be addressed." When reviewing Linscott's second direct appeal, the same Ohio court "decline[d] the invitation to revisit the issue" because its mootness decision in the first direct appeal was then the "law of the case."

We need not decide whether the Ohio appellate court found that Linscott's claim was procedurally defaulted nor whether Linscott's claim was actually subject to procedural default. "[A]s the Supreme Court has pointed out, the doctrines of exhaustion and procedural default raise only federal-state comity concerns and are not a jurisdiction[al] limitation o[n] the power of the court." *Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991) (citing *Granberry v. Greer*, 481 U.S. 129, 131-36 (1987)). We find it difficult, based on the limited record before us, to effectively evaluate whether the Ohio court properly concluded, if it concluded at all, that Linscott procedurally defaulted his psychiatric evaluation claim. *Cf. Hill v. Mitchell*, 400 F.3d 308, 315 (6th Cir. 2005) (citing *Greer v. Mitchell*, 264 F.3d 663, 675 (6th Cir. 2001) ("[W]hen the record reveals that the state court's reliance upon its own rule of procedural default is misplaced, we are reluctant to conclude categorically that federal habeas review of the purportedly defaulted claim is precluded.")). Therefore, we will not decide the procedural default issue because, even assuming that Linscott's claim was not defaulted, we would nevertheless affirm the district court's decision.

C.

Under 28 U.S.C. § 2254(d), a federal court applies *de novo* review to a petitioner's habeas claim if the claim was not adjudicated on the merits in state court proceedings. *See Maples v. Stegall,* 340 F.3d 433, 436-37 (6th Cir. 2003) (discussing *Wiggins v. Smith*, 539 U.S. 510 (2003)); *Williams v. Coyle*, 260 F.3d 684, 706 (6th Cir. 2001). Linscott claims that the use of the psychiatric evaluation at resentencing violated his Fifth Amendment rights. Even if we were to decide that the use of the psychiatric evaluation violated Linscott's Fifth Amendment rights, however, that constitutional "error would justify overturning [Linscott]'s sentence only if [Linscott] could establish that the error 'had substantial and injurious effect or influence in determining [his sentence].'" *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). We will not address the merits of Linscott's Fifth Amendment claim because we are convinced that, even if the use at sentencing of the psychiatric evaluation violated the Fifth Amendment, Linscott's petition must be denied because he fails to show that the alleged error had a substantial and injurious effect or influence on resentencing.

During the initial sentencing, carried out pursuant to Linscott's plea agreement, the Ohio trial court clearly stated that Linscott would serve the maximum penalty if Linscott violated the terms of that plea agreement. On December 28, 1999, the trial judge told Linscott, "[I]f you do not complete this program or there's any deviation from the condition I have set here, the sentence in this matter will be five years consecutive. . . The maximum I can impose is five on each count and I will run them consecutive." Thus, the trial court indicated, over fourteen months before the resentencing now being challenged, that if Linscott failed to successfully adhere to the plea agreement, he would be resentenced to the maximum allowable term. Furthermore, the importance that the trial court placed on Linscott's squandering of a favorable opportunity is clear from the transcript of the March 13, 2001 resentencing. The trial court noted that "[t]he Court did make great efforts to try to get this offender help" and Linscott's attorney "worked very diligently to obtain [Linscott's] admission to a very specialized treatment facility called the Volunteers of America." The trial court noted that it had referred Linscott to the VOA program "with the hopes that he would be able to obtain help for his problem." In summation, the judge court stated, "I told you at the time in the original sentencing if you could not avail yourself of the treatment opportunity that your prior

counsel worked hard for you to obtain that I would impose a severe sanction." It is thus clear from the sentencing transcript that the trial court determined what sentence Linscott should receive based, in large part, on the efforts to which the court had gone to provide him with help and Linscott's subsequent failure to fulfill his end of the plea agreement.

In addition, the trial court based its sentencing decision on information obtained from sources other than the psychiatric evaluation. First, the trial court noted that Linscott utilized a position of trust in the commission of the charged offenses; specifically, he was the teacher of the children who became the objects of his sexual imposition. Second, the trial court noted, in accordance with the views of the Ohio Ninth District Court of Appeals, that the potential for recidivism was especially high given the ages – eight and ten at the time of the offenses – of the child victims in the case. Third, the trial court noted the psychological injury suffered by the victims as well as the victim impact statement that had been submitted. In light of the weight that the trial court placed on these sources, we do not believe that the trial court's awareness of the psychiatric evaluation played a major role in its sentencing decision.

Finally, the information contained in the VOA report, which the trial judge also considered upon resentencing and which is not a subject of this appeal, was far more damaging to Linscott than the information contained in the psychiatric evaluation. The VOA report stated that, while he was in the VOA program, Linscott "admitted to having '. . . over thirty (30) [child] victims. . .'." No similar admission by Linscott can be found in the psychiatric evaluation. During the March 13, 2001 resentencing, the trial judge specifically stated that the VOA report "is disturbing to me." No similar statement by the court was made concerning the psychiatric evaluation.

Ultimately, the Ohio trial court imposed the sentence in question "because it would demean the seriousness of th[e] offense and not adequately protect the public" to do otherwise. The psychiatric evaluation "was neither the first nor the last opinion" the court heard in making its decision and "was by no means the key to the State's case" on the issue of proper sentence. *Penry*, 532 U.S. at 795-96. Accordingly, we believe that the consideration of the psychiatric evaluation, even if erroneous, did not have a substantial and injurious effect or influence on the sentence imposed. Therefore, we find that Linscott's psychiatric evaluation claim must fail.

III.

For the foregoing reasons, we hold that Linscott's petition was timely. Nonetheless, we affirm the decision of the district court to deny Linscott's petition because Linscott cannot establish that any error in resentencing had a substantial and injurious effect or influence on his sentence.