In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-2947

STANLEY E. MARTIN, JR.,

*Petitioner-Appellant,*

*v.*

BYRAN BARTOW,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 08-C-518-C—**Barbara B. Crabb**, *Judge.*

ARGUED APRIL 23, 2010—DECIDED DECEMBER 9, 2010

Before MANION and ROVNER, *Circuit Judges*, and
HIBBLER, *District Judge.**

HIBBLER, *District Judge.* This is an appeal from the
district court's order dismissing Petitioner-Appellant
Martin's application for a writ of habeas corpus. The
court dismissed Martin's application as untimely upon

___

* The Honorable William J. Hibbler, of the Northern District
of Illinois, sitting by designation.

Respondent Bartow's motion. Martin contends that the court miscalculated the date upon which the applicable statute of limitations began to run because of an improper interpretation of the relevant sections of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244(d)(1). We agree that the district court erred in its calculation and therefore reverse and remand for further proceedings.

## I. Background

In 1996, the State of Wisconsin successfully petitioned a state court to have Martin civilly committed as a "sexually violent person" pursuant to a Wisconsin statute allowing commitment, Wis. Stat. § 980.06, of any person who: (1) "has been convicted of a sexually violent offense"; and (2) "is dangerous because he or she suffers from a mental disorder that makes it likely that the person will engage in one or more acts of sexual violence," *id.* § 980.01(7). The predicate offense for Martin's commitment was a 1988 conviction for second degree sexual assault.

The Wisconsin civil commitment statute only allows for a person to be held in state custody "until such time as the person is no longer a sexually violent person." *Id.* § 980.06. Thus, the State must reexamine each person committed pursuant to the statute at least once a year, *id.* § 980.07, and a committed person may petition for discharge at any time, *id.* § 980.09. The State decided anew that Martin was a sexually violent person each year since his original commitment. Then, in 2005, after

a number of ill-fated challenges to his commitment in both federal and state court, Martin filed his fourth petition for discharge, challenging the State's reliance on two earlier convictions in justifying his commitment. The experts that testified at his original commitment trial based their testimony concerning the likelihood of recidivism in part on the fact that Martin previously faced charges for sexual assault in 1976 and 1979. However, in each of those cases, Martin pleaded guilty to lesser, non-sexual crimes and the State dropped the charges of sexual assault. The State continued to rely on those convictions in its annual reevaluations. The state circuit court summarily denied Martin's petition because it found "no change in the respondent's condition to warrant a hearing." The state appellate court affirmed that denial, but addressed Martin's petition on the merits, rather than relying on Martin's failure to allege a change in the facts of his case, as the lower court had. Finally, the Wisconsin Supreme Court denied his petition for leave to appeal. Thus, the State's decision to continue Martin's confinement became final on August 18, 2008.

Martin then filed a pro se federal habeas petition on September 2, 2008, pursuant to 28 U.S.C. § 2254, arguing that the State's reliance on his earlier convictions violated his plea agreements and his constitutional rights. The district court issued a sua sponte show cause order suggesting that his petition was untimely because he was originally committed in 1996 and AEDPA provides for a one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1). Martin then moved to amend his petition, and in his proposed amended petition he purported to

challenge the State's repeated use of his earlier convictions in its annual reevaluations.

Upon Respondent's motion, the district court dismissed Martin's petition as untimely. The court concluded that the AEDPA statute of limitations began running on the date of Martin's initial commitment order because Martin was essentially challenging that decision. On appeal, Martin argues that the applicable statute of limitations period actually began to run on the date of the most recent order continuing his commitment.

## II. Standard of Review

We review a district court's dismissal of a habeas petition de novo. *Moore v. Battaglia*, 476 F.3d 504, 506 (7th Cir. 2007).

## III. Analysis

AEDPA provides a one-year statute of limitations for an application brought by "a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The statute states that the limitations period begins to run from the latest of four enumerated events, but in this case the parties agree that the triggering event was the issuance of a judgment and that the period began to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A). What the parties dispute is which judgment Martin is challenging.

Martin's constitutional right to due process limits his civil commitment to the period during which he is "both mentally ill and dangerous, but no longer." *Foucha v. Louisiana*, 504 U.S. 71, 77, 112 S. Ct. 1780, 1784, 118 L. Ed. 2d 437 (1992). As soon as the State lacks "clear and convincing evidence" that Martin meets both conditions, it must release Martin from custody. *Id.* at 80, 112 S. Ct. at 1786. It is likely for this reason that the Wisconsin statute provides for annual reevaluation and allows Martin to challenge his commitment at any time. *See* Wis. Stat. §§ 980.07, 980.09. Recognizing that Martin's commitment is dependent on a finding that he is *currently* both mentally ill and dangerous, the district court accepted the parties' conclusion that each state court order continuing Martin's commitment or denying his challenge to such commitment constitutes a new judgment for purposes of AEDPA, and therefore starts a new statute of limitations period. We agree, as this seems to be the only logical conclusion. To hold otherwise would lead to one of two absurd results; either Martin could never challenge an order continuing his commitment that was entered more than a year after his initial commitment order or the statute of limitations applicable to his initial commitment order would never expire.

Thus, the parties in this case dispute only whether the district court correctly interpreted Martin's habeas petition to be a challenge to the original commitment order, rather than to the 2005 order continuing commitment. Martin argues that because his commitment in 2005 was only constitutional if it was based on a finding that he met the conditions for commitment at that time, he

was in custody pursuant only to the most recent order extending his commitment for another year. Thus, he contends that the limitations period began to run on the date of that order in 2005.

Respondent argues that if we were to accept Martin's interpretation, we would effectively allow persons adjudged to be sexually violent to repeatedly challenge their civil commitment on the same grounds. Thus, Respondent suggests that in order to determine what judgment Martin is challenging, we must look to the substance of the claims he made in his application. Respondent believes that an analysis of those claims leads to the inevitable conclusion that Martin is challenging his initial commitment. In support of its arguments on this point, Respondent looks to the language of AEDPA, to the statute's purposes, and to case law they believe to be relevant. After addressing each of these legal sources in succession below, we accept the principle espoused by the Respondent, but find that it does not apply in Martin's unique case.

A. Plain Language of the Statute

Respondent argues that Martin's interpretation of § 2244(d)(1) does not square with a reading of § 2244(d) as a coherent whole. First, Respondent points out that § 2244(d)(2) tolls the limitations period while an applicant seeks State post-conviction relief "with respect to the pertinent judgment or claim." Respondent argues that, given this language, it is not logical to conclude that a petitioner in Martin's position always challenges

the most recent judgment. Respondent argues that such a conclusion would render the term "pertinent" in § 2244(d)(2) a nullity.

Second, Respondent argues that Martin's interpretation would nullify §§ 2244(d)(1)(B)-(D), which lay out the other circumstances that might delay the start date for the limitations period. As an example, Respondent posits a situation where Martin discovered new evidence related to claims he made in his original commitment trial after the issuance of a new judgment for continued commitment. In that instance, section 2244(d)(1)(D) would seem to set the statute of limitations for challenging the original judgment running after Martin was already in custody pursuant to a new judgment.

There are two major flaws in Respondent's arguments. The first is Respondent's assumption that we cannot accept an interpretation of § 2244(d) that, given a particular set of facts, nullifies a provision of the statute. Of course, we always endeavor to construe statutes so as to give effect to each provision. *Duncan v. Walker*, 533 U.S. 167, 174, 121 S. Ct. 2120, 2125, 150 L. Ed. 2d 251 (2001) (internal quotation omitted). But, we do not render a provision a nullity simply by deciding that it has no effect in a specific factual context. In other words, even assuming for the sake of argument that § 2244(d)(1)(D) would not have much meaning in the rare context of a case involving civil commitment, like Martin's, it could still have meaning in the vast majority of habeas litigation.

A second problem with the argument is one that runs throughout Respondent's brief—he ignores the fact that

Martin bases his challenge on issues that could have been raised in his original commitment trial, but that are also relevant to the 2005 judgment because the State continues to rely on the same convictions to justify Martin's commitment. The Wisconsin Court of Appeals did not, as the lower court had, rest its decision on Martin's failure to allege any changes in his condition. Rather, it decided to treat the lower court's denial of Martin's petition for discharge as a full redetermination on the merits of all the issues that he raised in the petition.

In this respect, Martin's case is exceptional because, despite what the Wisconsin Court of Appeals did in this case, Wisconsin's civil commitment scheme for sexually violent persons does not require an annual reevaluation by the state court of the original grounds of commitment. Instead, it presumes that the original judgment continues to justify confinement and asks whether anything has changed that should cause the court to reevaluate the confinement. Wis. Stat. § 980.09(1). And while *Foucha*, 504 U.S. at 77, 112 S. Ct. at 1784, prohibits Wisconsin from confining a person civilly committed unless it has "clear and convincing" evidence, neither *Foucha* nor subsequent precedent call Wisconsin's procedures into constitutional doubt or require the State to reexamine its initial justifications for confinement on some periodic basis.

An examination of Wisconsin law regarding petitions for discharge, which Martin is challenging in his habeas petition, verifies that in many cases the state court will not consider the evidence originally justifying con-

finement. The initial burden lies with the petitioner, not the State. The petitioner must allege facts in his petition that would allow a court or jury to conclude that his condition has changed since the date of initial commitment. Wis. Stat. § 980.09(1); *see also In re Commitment of Kruse*, 296 Wis. 2d 130, 150, 722 N.W.2d 742, 752 (2006). If the petitioner meets this pleading burden, the court will hold a hearing to determine whether a jury could conclude that the petitioner is no longer a sexually violent person. Wis. Stat. § 980.09(2).[1] It is only after the petitioner meets his burden that the State must demonstrate by clear and convincing evidence that the petitioner's confinement remains justified. *Id.* § 980.09(3).

Thus, given Wisconsin's decision to revisit its initial justifications for confining Martin in response to his 2005 petition, we need not worry whether Martin could still challenge his original commitment order, or what the effect of such a challenge would be. In this respect, Martin attempts to prove too much. In order to succeed, Martin does not need to show that a petitioner always challenges the most recent judgment continuing his or

---

[1] At the time of Martin's 2005 petition, he had to demonstrate probable cause—rather than merely allege—that his condition had changed. *See* Act of May 26, 1994, Wisc. Legis. Serv. Act 479 (relating to civil commitment of sexually violent persons) (portion to be codified at Wis. Stat. § 980.09(2)(a)). But the essential fact remains that absent the necessary showing on the petitioner's part, the court does not reconsider whether he was a sexually violent person in the first place.

her civil commitment. Instead, he only needs to show that he is challenging the most recent judgment in this case. In fact, there is no dispute that when he filed his petition, Martin was in custody pursuant to the 2005 judgment, and that he challenged one of the grounds upon which the Wisconsin courts upheld that judgment. Thus, there is nothing in the language of the statute that leads us to believe he is challenging any judgment other than the one which he claims to be challenging.

## B.   AEDPA's Purposes

This same point resonates in our analysis of Respondent's claim that a ruling in favor of Martin conflicts with the purposes behind AEDPA. Respondent essentially argues that allowing Martin to challenge his commitment now on grounds that he could have raised years ago conflicts with Congress's goals of promoting comity, finality, and federalism while avoiding piecemeal litigation. *See Williams v. Taylor*, 529 U.S. 420, 436, 120 S. Ct. 1479, 1490, 146 L. Ed. 2d 435 (2000); *Duncan v. Walker*, 533 U.S. 167, 180, 121 S. Ct. 2120, 2128-29, 150 L. Ed. 2d 251 (2001). However, as noted above, Martin is in a unique situation because the State put the question of whether his previous convictions are legal grounds for his commitment at issue again following his 2005 petition. Thus, despite the fact that Martin could have challenged the State's reliance on his convictions at his initial commitment hearing, his failure to do so has not caused the question to grow stale. Instead, the State has preserved

it by resting its decision to continue Martin's commitment on those same grounds now. Given that fact, the application of AEDPA's goals is somewhat more complicated in this case.

In addition to the fact that the states may introduce procedures that reduce duplicative litigation, as Wisconsin has done here, a couple of other factors make Martin's situation unique when it comes to application of AEDPA's principles. First, he is a civil detainee, and thus part of a population that makes up a small portion of habeas petitioners. Second, his circumstance arises only after exhaustion of state remedies, further narrowing the field. In short, allowing Martin's case to go forward will not exactly open the floodgates to excessive and repetitive federal habeas litigation.

Lastly, while achieving finality is one of the goals of AEDPA, we must interpret that goal in a different light within the context of civil commitment. Finality is of course a great concern when it comes to the resolution of a particular claim or argument, but overall finality will depend in large part on the structure of a particular state's civil commitment scheme—as designed and implemented. After all, unlike a conviction and sentence for a discrete criminal offense, a person's current status as a sexually violent person is a determination that is constantly and forever disputable as a matter of constitutional law, *see Foucha*, 504 U.S. at 77, 112 S. Ct. at 1784, and Wisconsin statutory law, Wis. Stat. § 980.07.

C.  Case Law

Respondent does not gain any additional support by referring to case law. In fact, while case law applicable to this distinctive case is scarce, the cases that are relevant undercut his position further.

The only case either party cites that considers the limitations provisions' application to a petition challenging civil commitment is *Revels v. Sanders*, 519 F.3d 734 (8th Cir. 2008). In that case, the Missouri courts denied the petitioner's application for unconditional release from civil commitment under a statute analogous to the Wisconsin statute at issue here. *Id.* at 740; *see also* Mo. Rev. Stat. § 552.040.13. The Eighth Circuit held that the AEDPA statute of limitations began to run on the date that the State denied his application, rather than on the date of his original conviction and commitment. *Revels*, 519 F.3d at 740. The court noted that the petitioner was not challenging his initial commitment, but his continued commitment. *Id.* Respondent attempts to distinguish *Revels* by focusing on the fact that the petitioner in that case acknowledged that he did meet the criteria for confinement when he was originally committed and was claiming that his mental health had improved to the point where he was no longer eligible for civil commitment. *See id.* However, the *Revels* court only makes note of that acknowledgement to illustrate that the petitioner was in fact challenging the later judgment. *Id.* The court never indicates that a petitioner cannot challenge a later judgment solely because his reasons for challenging that judgment could have been the basis for challenging an earlier judgment.

Respondent is unable to point to any precedent that stands for that proposition. Instead, he once again falls back on his argument that we should find that Martin is challenging his original commitment by looking to the claims he makes in his application. He cites to cases that distinguish between claims challenging convictions and those challenging post-conviction orders, including resentencing orders. Those cases do distinguish between judgments based on the content of the claims in the petitions, but they say nothing about the question of whether a petitioner can challenge a later judgment on grounds that applied to an earlier judgment. *See, e.g., Walker v. Roth*, 133 F.3d 454, 455 (7th Cir. 1997); *Bachman v. Bagley*, 487 F.3d 979, 982-84 (6th Cir. 2007) (citing *Linscott v. Rose*, 436 F.3d 587, 591 (6th Cir. 2006) and *DiCenzi v. Rose*, 452 F.3d 465, 469 (6th Cir. 2006)).

The Supreme Court's recent opinion in *Magwood v. Patterson*, 130 S. Ct. 2788, 177 L. Ed. 2d 592 (2010), indicates that a petitioner can indeed do just that under some circumstances. Like some of the cases mentioned above, *Magwood* involves a challenge to a resentencing. *Id.* at 2795. However, what makes *Magwood* unique, and more relevant to the case at bar, is that the petitioner in *Magwood* challenged his resentencing on grounds that he could have raised in his challenge to his original sentencing, but did not. *Id.* Although the *Magwood* Court was concerned with the ban on second or successive petitions in 28 U.S.C § 2244(b), the ruling includes language that provides guidance on how we should apply the statute of limitations in § 2244(d)(1). Specifically, the Court emphasized the effect of a new state

judgment, holding that "[a]n error made a second time is still a new error." *Id.* at 2801. Martin is not challenging a resentencing, but he is challenging a decision made repeatedly by the State. If that decision was made in error, and it resulted in Martin's continued commitment, *Magwood* suggests that Martin may challenge that new error separately from any previous error.

However, we note that *Magwood* will probably not be particularly relevant in the run-of-the-mill challenge to a denied petition for discharge. In *Magwood*, the petitioner raised a challenge to his death sentence after the sentencing court conducted an entirely new sentencing hearing and considered all the evidence and arguments anew. The case left undisturbed precedent concerning the scope of habeas review for challenges to parole decisions or the loss of good time credits, *id.* at 2800 n.12, which are more analogous to a petition for discharge than the resentencing that was before the *Magwood* Court.

Unlike in this case, it will generally not be sufficient to find that there are multiple judgments in a civil confinement case and begin the AEDPA statute of limitations clock with the latest judgment because we will not know *which* judgment a petitioner is challenging. We must inquire further and then decide whether that judgment amounts to a redetermination that a person civilly committed is mentally ill and dangerous or merely a determination that there are no changed circumstances warranting a reconsideration of the initial determination. In light of *Magwood*, this distinction is critical to prevent a flood of repetitive habeas litigation in this area.

In other words, we accept the State's argument that we must undertake a comparison of Martin's claims with the relevant judgments. But, in this case there are two judgments that are based on Martin's previous convictions. Given our duty to interpret pleadings liberally, especially those filed by pro se litigants, *see, e.g., Perruquet v. Bailey*, 390 F.3d 505, 512 (7th Cir. 2004), we accept Martin's contention that he is in fact challenging the State's most recent decision. Thus, his petition is not barred by the one-year statute of limitations in § 2244(d)(1), and it was error for the district court to dismiss it on that basis.

## IV. Conclusion

For the foregoing reasons, we REVERSE and REMAND for further proceedings.