In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-3067

LAWRENCE G. RUPPERT and THOMAS A. LARSON, on behalf of
themselves and all others similarly situated,

*Plaintiffs-Appellees,*

*v.*

ALLIANT ENERGY CASH BALANCE PENSION PLAN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:08-cv-00127-bbc — **Barbara B. Crabb**, *Judge.*

ARGUED APRIL 3, 2013 — DECIDED AUGUST 9, 2013

Before POSNER, WOOD, and HAMILTON, *Circuit Judges.*

POSNER, *Circuit Judge.* This is an appeal by the defendant
in a class action suit brought by participants in a cash bal-
ance defined benefit pension plan, alleging that the plan as
administered violated ERISA, and seeking recovery of bene-
fits denied the participants as a consequence of the violation.
29 U.S.C. § 1132(a)(1)(B). The district judge granted sum-
mary judgment in favor of the class—actually classes, be-

cause the judge divided the class into two subclasses: subclass A challenges the projection rate used by the defendant, subclass B the defendant's handling of the pre-mortality retirement discount. We explain these terms in due course.

The employee participating in a cash balance plan has a "notional" retirement account (notional because the individual account is not funded) to which every year the employer adds a specified percentage of the employee's salary plus interest at a specified rate on the amount in the account. If the employee remains employed by the plan sponsor until retirement age, either the balance in his notional retirement account will be used to purchase an annuity for him or, if he prefers, he can receive the cash balance as a lump sum.

But suppose the employee leaves the employ of the plan's sponsor before reaching retirement age. Between his leaving and his reaching retirement age his cash balance will grow because it will still earn interest every year. Critically so far as this case is concerned, that interest is an accrued benefit—an indefeasible entitlement. *Thompson v. Retirement Plan for Employees of S.C. Johnson & Son, Inc.*, 651 F.3d 600, 602 (7th Cir. 2011); *Berger v. Xerox Corp. Retirement Income Guarantee Plan*, 338 F.3d 755, 758–59 (7th Cir. 2003). But if he leaves early and decides to take his retirement benefit as a lump sum at that time, ERISA provides that the lump sum will be not his current cash balance but the present value of the lump sum retirement benefit that he would be entitled to receive if he deferred receipt until he reached retirement age. 29 U.S.C. § 1054(c)(3); *Thompson v. Retirement Plan for Employees of S.C. Johnson & Son, Inc., supra*, 651 F.3d at 602; *Berger v. Xerox Corp. Retirement Income Guarantee Plan, supra*, 338

F.3d at 758–59; *Esden v. Bank of Boston*, 229 F.3d 154, 158–59 (2d Cir. 2000).

So calculating the lump sum entitlement of an employee who departs before reaching retirement age requires increasing his cash balance by the amount of interest he could expect to receive until retirement and then discounting the resulting increased cash balance to reflect the benefit of receiving money now rather than in the future. This opposed action of increasing the cash balance by future interest on it and then discounting that increased cash balance to present value is called "whipsawing." It involves projecting forward to the value of the retirement benefit at retirement age (moving up) and then discounting backward to the present (moving down), and thus resembles the action of a two-person saw (a "whipsaw"). *Johnson v. Meriter Health Services Employee Retirement Plan*, 702 F.3d 364, 367 (7th Cir. 2012); *Esden v. Bank of Boston*, *supra*, 229 F.3d at 159.

When a plan entitles participants to interest credits at a variable rate, as this plan does, the interest credits that would have accrued between the lump sum distribution that an employee who left early took and his reaching normal retirement age cannot be known for certain; they can only be estimated. The rate picked to estimate those interest credits is called the "projection rate." It will not generate an exact match to the interest credits because the variations in future interest credits cannot be known. But it must be a reasonable, good-faith estimate. *Thompson v. Retirement Plan for Employees of S.C. Johnson & Son, Inc.*, *supra*, 651 F.3d at 609–10; *Berger v. Xerox Corp. Retirement Income Guarantee Plan*, *supra*, 338 F.3d at 760; *Esden v. Bank of Boston*, *supra*, 229 F.3d at 166–67.

If the projection rate used to calculate the cash balance at retirement age is identical to the interest rate used to discount the cash balance to present value (the discount rate), the early retiree's lump sum is simply the cash balance on the date he leaves the employ of the plan sponsor. That was used in the defendant's 1998 retirement plan used to calculate the lump sum retirement benefits of the early retirees, the members of the projection-rate subclass. The plan administrator used the 30-year Treasury bond rate for both the projection rate and the discount rate. But the plan document had promised the plan participants an interest-crediting rate of 4 percent, or 75 percent of the plan's investment returns for each year in which an employee was accruing benefits, whichever was greater. The judge determined that the 30-year Treasury rate was not a reasonable estimate of the interest-crediting rate and thus of the future interest credits to which the plan entitled the participants. (The use of the 30-year Treasury rate as the discount rate was permitted by ERISA in 1998, 29 U.S.C. § 1055(g)(3) (1998), and so is not challenged.)

Once the judge decided that the projection rate had been too low, she had next to decide the damages that the class members had sustained. So she conducted a bench trial at which expert witnesses presented evidence of what would be the most reasonable projection rate. On the basis of the expert testimony, the judge concluded that it was 8.2 percent.

She rejected the plan's proposed method of calculating the projection rate (not a method advocated by any of the expert witnesses, however). The plan's method would have yielded a lower rate, hence a lower estimate of the future interest credits of the class members and thus a lower estimate

of the present value of those credits. The method based the projection rate on a 1 to 5 year rolling average of the plan's past interest-crediting rates, beginning in 1998. The rate for 1998 would be the rate in just that year, the rate for 1999 would be the average rate in that and the preceding year; and so on until, beginning in 2002, the rate for each year would be the average of the rate in that year and the rates in the previous four years.

Rolling averages are a permissible method of estimating interest rates for cash balance plans. *Thompson v. Retirement Plan for Employees of S.C. Johnson & Son, Inc., supra*, 651 F.3d at 610 n. 17; *Berger v. Xerox Corp. Retirement Income Guarantee Plan, supra*, 338 F.3d at 760; *Esden v. Bank of Boston, supra*, 229 F.3d at 170; cf. Treas. Reg. § 1.401(a)(4)-8(c)(3)(v)(B); 29 U.S.C. § 1054(b)(5)(B)(vi)(I). But of course there is no averaging when only one year is used to estimate the interest rate. The only reason the plan would have for choosing 1 to 5 years rather than just 5 years was to exclude all years before 1998. That arbitrary position—for of course the plan's annual rates of return for the five years preceding 1998 were known—was doubtless intended to exploit the fact that the plan, like most investors, had high earnings in the late 1990s—the years of the dot-com stock bubble—and low returns in 2000 through 2002 in the wake of the dot-com crash. By excluding most of the 1990s from the average, the defendant produced a lower estimate of the future interest credits owed the participants who took their lump sums in the early 2000s. The result of this discreditable gimmickry, properly rejected by the district judge, was to produce an average estimated projection rate of only 7.27 percent (and for some participants only 5.45 percent), significantly below the judge's 8.2 percent estimate.

The case should have ended there, but did not because in 2011, before any distribution of damages to the class, the defendant had amended the 1998 plan. The aim was to moot the lawsuit and by doing so reduce the defendant's damages. For the amended plan was retroactive. It purported to re-place the rights that the class members had obtained in the lawsuit (the 8.2 percent projection rate) with the 1 to 5 year rolling average. But because the rolling average yielded in-terest rates below the 8.2 percent that the judge had already determined the participants to be entitled to, she ruled that the rolling average could not be applied to them.

Anyway the retroactive modification of a plan can't be used to diminish damages to which participants have been held entitled, even if the modification is lawful. In effect the defendant is arguing that okay, we screwed our participants unlawfully, but we could have screwed them lawfully, and that's what we've now done by amending the plan, and since the amendment is retroactive it wipes out the claims on which the case is based, mooting the lawsuit.

The defendant argues that at least it shouldn't have to project forward, at the 8.2 percent rate fixed by the district judge, a retroactive supplement to account balances that it gave most participants in 2011. The supplement changed the formula for calculating interest credits between January 1 and the date of the distribution of the lump sum. But the amendment was retroactive to 1998. So an employee who quit in the mid-2000s and elected to receive a lump sum is entitled to the present value of the retroactive increase in partial-year credits, for partial-year credits are accrued bene-fits under this plan just like full-year ones.

The plan administrator also reduced each participant's lump sum for the risk that the participant might have died before reaching retirement age and thus lost all benefits under the plan. This reduction in the participant's lump sum payment, derived from the probability that the plan participant would have died after receiving the lump sum but before reaching retirement age, is called a "pre-retirement mortality discount." The discount the defendant wants to impose (and that the district judge held to be unlawful) assumes that a participant or his survivor would receive no interest between the date of the participant's death and the date on which he would have reached retirement age had he lived. But the plan document provides that the survivor is entitled to the "Actuarial Equivalent present value of the Participant's Cash Balance Account payable in a Single Life Annuity." To be the "Actuarial Equivalent" that annuity would have to include interest accretions to the cash balance account up to the date on which the participant would have reached retirement age had he not died. The plan is also explicit that a survivor who wants a lump sum may delay receipt to the date when the participant would have reached retirement age had he survived till then; by waiting the survivor obtains benefits identical to what the participant would have received. In other words, upon the participant's death the survivor could choose to take the participant's place in the plan with no loss of future interest credits. *Berger v. Xerox Corp. Retirement Income Guarantee Plan*, *supra*, 338 F.3d at 764; *West v. AK Steel Corp.*, 484 F.3d 395, 410–11 (6th Cir. 2007).

The defendant also raises issues concerning the six-year statute of limitations applicable to the claims. ERISA provides a statute of limitations for some types of ERISA suits, for example suits for breach of fiduciary duty, see 29 U.S.C. §

1113, but not for others, such as the present one, which seeks recovery of benefits under section 1132. In such a case the court borrows a statute of limitations from an analogous state law. *Young v. Verizon's Bell Atlantic Cash Balance Plan*, 615 F.3d 808, 815–16 (7th Cir. 2010); see generally *Reed v. United Transportation Union*, 488 U.S. 319, 323–24 (1989). The parties agree that the state law most analogous to section 1132 is Wisconsin contract law, which has a six-year statute of limitations. Wis. Stat. § 893.43. So that's the statute of limitations applicable to the claims in this case.

The defendant argues that communications that the plan administrator made to plan participants in 1998 put them on notice that the 30-year Treasury rate would be the projection rate, and so, since the suit was filed in 2008, the statute of limitations bars all the claims made in it. We disagree. Those communications were, as in the nearly identical case of *Thompson v. Retirement Plan for Employees of S.C. Johnson & Son, Inc.*, *supra*, 651 F.3d at 605–06, too murky to give the participants adequate notice that the projection rate would or could fall short of what the plan had promised. As in *Thompson*, participants in the defendant's plan, though told they could "receive [their] vested account balance as a lump sum" or the "vested portion of their plan benefit" if they left the company before retirement, were not told how that balance or benefit would be calculated, what exactly had vested, the terms of the applicable whipsaw, or even whether there would be a whipsaw.

The defendant also pleads an alternative, narrower but meritorious, statute of limitations defense. Many members of the class (we've not been told how many) took their lump sums more than six years before the suit was filed (that is,

took them between 1998 and 2002). The district judge ruled that the further violation of ERISA committed when the defendant adopted the 2011 amendment restarted the limitations period. It was indeed a fresh violation, but it did not revive claims, based on the projection rate, extinguished by the statute of limitations because they had accrued when the claimants had received their lump sum payouts more than six years before suit was filed.

The class points to our decision in *Martin v. Bartow*, 628 F.3d 871, 876 (7th Cir. 2010). The petitioner had been civilly committed pursuant to a judgment rendered in 1996. In 2005 a further judgment was entered, continuing his civil commitment. The statute of limitations for challenging the 1996 judgment had expired, but we held that the statute of limitations applicable to the 2005 judgment had not expired. The renewed decision to continue his commitment was a fresh injury. There is no fresh projection-rate injury (as distinct from a fresh projection-rate violation) in this case. The 2011 amendment was merely a failed effort to rectify the projection-rate injury caused by the 1998 plan.

The defendant also raises a statute of limitations issue concerning subclass B's claim. But that claim relates to a violation of ERISA that first occurred in 2011, when the plan for the first time reduced benefits pursuant to a pre-retirement mortality discount. The statute of limitations for subclass B did not begin to run until then.

The defendant's final argument is that one of the two class representatives was not an adequate representative. See Fed. R. Civ. P. 23(a)(4). That is an absurd argument for a defendant to make—a defendant benefits from a class representative who is inadequate to represent the interests of the

class. The argument is especially absurd when made when the case is over and we know that the class representatives did an excellent job. See *Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *Gonzales v. Cassidy*, 474 F.2d 67, 71–72 (5th Cir. 1973).

But while the class representatives have been adequate up to now, on remand (for a remand is necessary in light of our ruling on the application of the statute of limitations to the projection-rate subclass) a new representative or representatives will have to be appointed for subclass A. The two named plaintiffs, Ruppert and Larson, have up to now been the representatives of both subclasses, and they remain adequate representatives of subclass B—the subclass challenging the pre-retirement mortality discount—because the lump sum retirement benefits that they received in 2011 had been subjected to the discount. But Ruppert is no longer a member of subclass A, because he received his lump sum in 2011 calculated on the basis of a projection rate higher than 8.2 percent. And Larson is out as well, by virtue of our statute of limitations ruling; for he had received his lump sum in 2000.

The judgment is reversed and remanded with respect to the statute of limitations regarding class members who took their lump sum more than six years before the suit was filed, and also with respect to the adequacy of the class representatives, and is otherwise affirmed.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.